UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**Kathryn L. Romero**,

Plaintiff,


v.                                         Case No._____

                                           **Jury Trial Demanded**



**Mallory Alexander International Logistics, LLC**,

Defendant.

---

### COMPLAINT

---

### I. INTRODUCTION

1. This action arises from Defendant's failure to provide reasonable accommodation under the Americans with Disabilities Act ("ADA"), its failure to engage in the interactive process, and its retaliation against Plaintiff after she sought accommodation and medical leave following serious health conditions and surgery.

2. Plaintiff was a long-term, high-performing employee who successfully performed her job remotely for several years.

3. When Plaintiff experienced significant medical issues and requested accommodation consistent with her established work arrangement, Defendant denied the request based on a technical error in medical paperwork, ceased communication after the error was corrected, and treated Plaintiff as separated from employment while she was actively

1

seeking accommodation and leave.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 12117.

5. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant, a Delaware corporation, conducts significant business in this District, listing an address in Memphis, Tennessee as its Global Service Center, and the events giving rise to Plaintiff's claims occurred here.

6. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging disability discrimination and retaliation. The EEOC issued a Notice of Right to Sue dated January 15, 2026 (attached hereto as Exhibit 1). Plaintiff has filed this action within ninety (90) days of receipt of that Notice and has satisfied all administrative prerequisites to bringing this lawsuit.

## II. PARTIES

7. Plaintiff Kathryn L. Romero is an individual residing in Tennessee.

8. Defendant Mallory Alexander International Logistics, LLC ("Mallory Alexander") is a logistics and freight forwarding company doing business in Tennessee.

## III. FACTUAL ALLEGATIONS

### A. Employment History and Work Ethic

9. Plaintiff worked for decades in corporate environments, including positions with law firms, shipping lines, and logistics-related businesses.

10. For the last, approximately fourteen (14) years of her career, Plaintiff was employed by Defendant Mallory Alexander, where she served as an Operations Supervisor in

logistics-focused operations, overseeing and coordinating day-to-day operational functions and remaining a reliable, long- tenured employee.

11. Plaintiff did not seek to leave her employment and wanted to continue working, but her ability to do so was undermined by Defendant's actions described below.

### B. Plaintiff's Role and Job Functions

12. Plaintiff worked for Defendant for over a decade in a logistics-focused role supporting Defendant's in-house operations with a major customer, Cargill Cotton. Plaintiff's position did not primarily involve documentation processing.

13. From March 2020 through her separation in February 2025, Plaintiff did not have ongoing supervisory responsibility over any employees. Although Plaintiff's title included the word "Supervisor," day-to-day supervision of documentation staff was handled by the branch manager, and Plaintiff was not responsible for managing personnel or overseeing documentation operations.

14. Earlier in her employment, prior to the COVID-19 pandemic, Plaintiff supervised a small logistics team while working on-site at Cargill Cotton. During the COVID-19 period beginning in March 2020, those logistics roles were eliminated, reassigned, or moved to other customers, and Plaintiff no longer had employees assigned to her for supervision. Defendant accepted this structure for several years.

15. Cargill Cotton's logistics employees, with whom Plaintiff worked directly, were located out of state and performed their roles remotely.

### C. Remote Work History

16. Beginning in March 2020, Plaintiff successfully performed her job remotely on a full-time basis. Defendant permitted and relied upon Plaintiff's remote work arrangement

for several years, through late 2024, without any performance issues.

17. Plaintiff performed her essential job functions through electronic systems, email, phone, and on occasion, virtual meetings.

### D. Medical Issues and Employer Knowledge

18. Plaintiff had a long history of medically treated anxiety, managed with medication since the 1990s, which did not impair her ability to work for decades, including throughout her employment with Defendant and during years of successful remote work.

19. In early 2024, Plaintiff experienced escalating medical issues, including emergency medical treatment, significant weight loss, and gastrointestinal symptoms.

20. On or about October 2, 2024, Plaintiff underwent major surgery. Defendant's management team, including the branch manager and a VP of Agriculture, were aware of Plaintiff's surgery, recovery needs, and declining physical condition.

21. Following surgery, Plaintiff was instructed to undergo approximately two weeks of intensive recovery, including rest, assistance with surgical drains, bathing, dressing, and other activities of daily living. After that initial period, Plaintiff's surgeon advised that full recovery would require an additional **four to six months** for swelling to resolve, muscle tissue to heal and reform, and for Plaintiff to regain baseline physical stability. During this extended recovery period, Plaintiff was advised to rest and avoid unnecessary physical strain and stress.

22. After Plaintiff returned to the office in December 2024, despite her ongoing medical recovery, Plaintiff communicated to the branch manager that her surgeon had advised continued rest and avoidance of stress during a four- to six-month recovery period. In response, the branch manager suggested that Plaintiff could "rest in the lactation room"

while working on-site.

### E. Acquisition, Policy Changes, and Return-to-Office Demand

23. In approximately October 2024, Defendant announced that a majority interest in the company had been acquired by CoPilot and Endeavor. This announcement coincided with Plaintiff's surgery and recovery period, as well as with operational and policy changes affecting work location requirements.

24. In or around November 2024, Plaintiff was informed that she would be required to return to in-office work beginning in December 2024.

25. Plaintiff attempted to continue working and began commuting on December 10, 2024, despite ongoing surgical recovery.

26. After resuming the commute, Plaintiff's symptoms worsened and included panic attacks, inability to sleep for days at a time, heart racing, nausea, crying spells, and visual disturbances.

27. These symptoms substantially limited major life activities, including sleeping, concentrating, thinking, working, and safely commuting.

### F. Accommodation Paperwork and Interactive Process Breakdown

28. In late 2024, notwithstanding Plaintiff's long-standing remote work arrangement and ongoing medical recovery, Defendant required Plaintiff to return to working on-site in downtown Memphis.

29. Plaintiff requested reasonable accommodation, including continuation of remote work, which had already been proven effective for several years.

30. Plaintiff did not request elimination of job duties or a leave of absence. Rather, Plaintiff sought a reasonable accommodation that would allow her to continue performing the

5

essential functions of her position, specifically continuation of remote work, which her physician advised was medically appropriate to avoid foreseeable harm to her physical and mental health.

31. On January 9, 2025, Plaintiff submitted medical documentation in support of her accommodation request, as reflected in Exhibit 2. Plaintiff's treating physician advised that returning to full-time on-site work would be detrimental to Plaintiff's physical and mental health and that continued remote work was medically appropriate.

32. On January 16, 2025, Defendant advised Plaintiff that her request for accommodation had been denied on the basis that Plaintiff was not deemed to have a disability as defined by the ADA, as reflected in Exhibit 3. Defendant represented that this determination was based on a medical certification in which Plaintiff's treating physician inadvertently checked "no" in response to whether Plaintiff had a medical condition or impairment that substantially limits one or more major life activities.

33. On January 17, 2025, shortly after Defendant denied Plaintiff's accommodation request, Plaintiff was hospitalized for acute medical symptoms and remained hospitalized through January 23, 2025. Defendant was aware of Plaintiff's medical condition during this period.

34. On February 18, 2025, after Plaintiff's counsel identified that Plaintiff's accommodation request had been denied based on an inadvertently checked box on the medical certification, Plaintiff promptly contacted her physician, had the paperwork corrected as instructed, and resubmitted the corrected documentation to Defendant's human resources department, as reflected in Exhibit 4.

35. Defendant did not meaningfully engage in the interactive process or propose alternative

reasonable accommodations. Defendant's only suggestion in response to Plaintiff's accommodation request was that Plaintiff could report to the office earlier or later in the day, rather than permitting continued remote work or discussing other accommodations responsive to Plaintiff's medical limitations.

36. Defendant's unilateral silence terminated the interactive process despite Plaintiff's ongoing willingness to participate in good faith.

### G. FMLA and Short-Term Disability Efforts

37. During this same period, Plaintiff requested information and paperwork related to FMLA and short-term disability leave, as reflected in Exhibit 5.

38. Plaintiff made good-faith efforts to obtain physician certification. Providers advised Plaintiff that they could not complete FMLA paperwork until care was formally established, a process that could not be completed within the short deadlines imposed by Defendant.

39. Plaintiff informed Defendant of these difficulties, as reflected in Exhibit 6. Defendant did not provide flexibility or assistance despite knowledge of Plaintiff's medical condition.

40. Plaintiff was unable to return to work during this period and continued attempting to navigate Defendant's accommodation and leave processes.

41. Plaintiff was forced to separate from employment under circumstances that constituted a constructive discharge.

42. Defendant's refusal to accommodate Plaintiff during a medically documented recovery period left Plaintiff without a viable means to continue working without serious risk to her health.

## H. Separation from Employment

43. Defendant issued a separation letter dated February 17, 2025, as reflected in Exhibit 7. The envelope indicates it was mailed on February 20, 2025, as reflected in Exhibit 8.

44. At the time of separation, Plaintiff was actively seeking accommodation and medical leave and had not disengaged from employment.

45. Defendant characterized Plaintiff's separation as a resignation or job abandonment despite Plaintiff's continued efforts to comply with accommodation and leave processes.

## IV.    DISABILITY AND QUALIFICATION

46. Plaintiff suffered from physical and mental impairments that substantially limited one or more major life activities.

47. At all relevant times, Plaintiff remained capable of performing the essential functions of her position with reasonable accommodation.

48. Plaintiff's inability to work without accommodation stemmed from commuting and physical presence requirements, not from an inability to perform the substantive duties of her position.

49. Plaintiff's essential job functions were performed through electronic communication systems and were capable of being performed without physical presence in Cargill Cotton's downtown office.

50. Plaintiff's medical limitations related primarily to commuting and physical presence during a defined recovery period, not to the substantive functions of her job.

## V.  CLAIMS FOR RELIEF

### COUNT I – Failure to Accommodate (ADA)

8

51. Plaintiff was a qualified individual with a disability within the meaning of the ADA.

52. Plaintiff was able to perform the essential functions of her position, with reasonable accommodation, and did perform those functions remotely for years.

53. Defendant was aware of Plaintiff's disability and accommodation request.

54. Defendant denied reasonable accommodation and failed to engage in the interactive process.

55. Defendant's conduct violated the ADA.

56. Defendant had a duty to engage in good-faith dialogue regarding reasonable accommodation.

57. Defendant terminated the interactive process by silence after corrected medical documentation was submitted.

58. Defendant's failure caused Plaintiff harm.

### COUNT II – Retaliation (ADA)

59. Plaintiff engaged in protected activity by requesting accommodation and medical leave.

60. Defendant took adverse action against Plaintiff, including treating her employment as terminated and characterizing her separation as job abandonment.

61. Defendant's adverse actions occurred within weeks of Plaintiff's accommodation request and medical leave efforts.

62. A causal connection exists between Plaintiff's protected activity and Defendant's actions.

63. Defendant terminated Plaintiff's employment and characterized her separation as job abandonment shortly after her accommodation request and medical leave efforts.

## VI.  DAMAGES

64. As a result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost benefits, emotional distress, and other damages.

65. Plaintiff seeks compensatory and punitive damages up to the statutory cap applicable to employers with 501 or more employees, as well as back pay, front pay, attorney's fees, and costs.

## VII.  JURY DEMAND

66. Plaintiff demands a trial by jury.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

a.  Declare that Defendant violated the ADA;

b.  Award compensatory damages in an amount not to exceed $300,000;

c.  Award back pay and front pay as appropriate;

d.  Award Plaintiff her costs of suit and reasonable attorney's fees as permitted by law;

e.  Grant such other relief as the Court deems just and proper.

Respectfully submitted,
/s/ Jonathan T. Mosley_____
JONATHAN T. MOSLEY, TN BAR 031526
HANDEL R. DURHAM, JR., TN BAR 10949
5050 Poplar Avenue, Suite 1632
Memphis, Tennessee 38157
*Attorneys for Plaintiff*

**EXHIBIT LIST**

Exhibit 1 – EEOC Notice of Right to Sue dated January 15, 2026
Exhibit 2 – Physician Accommodation Documentation dated January 7, 2025 Exhibit 3 –
Accommodation Denial dated January 16, 2025
Exhibit 4 – Corrected Medical Certification dated February 18, 2025 Exhibit 5 –
E-mail to HR Dept. requesting FMLA and STD paperwork
Exhibit 6 – E-mail to HR Dept. advising of difficulties with FMLA paperwork Exhibit 7
– Separation Letter dated February 17, 2025
Exhibit 8 – Envelope dated February 20, 2025